IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

HARVEY NOVACK,

    Plaintiff,

v.                                              CASE NO. 1:04-cv-00040-MP-AK

ANTHONY J PRINCIPI,

    Defendant.

_____/

**O R D E R**

This matter is before the Court on Doc. 18, Motion for Summary Judgment by Anthony J Principi. The plaintiff has responded, doc. 24, as amended by docs. 25 and 26. For the reasons given below, summary judgment is granted for the defendant.

Plaintiff has been a dentist with the VA since 1985. Ex. A to Defendant's motion for summary judgment, Doc. 18, p. 4.[1] Plaintiff was initially stationed in Miami, but in 1998 learned that there might be an opportunity for him to transfer to the VA clinic in Gainesville. Id. A dentist at the VA clinic in Lake City had informed the VA that he intended to relocate to Miami and might leave the VA system if there was no opening in Miami. Id.; Deposition of Dr. John Thomas, p. 19-21, 29-31 (Exhibit C); Deposition of Lawrence Scheitler, p. 21-26 (Exhibit D). Plaintiff's supervisor in Miami was aware of Plaintiff's longstanding desire to move to Gainesville and proposed a swap of dentists. Ex. A, p. 4. Because the dentist opening was for the Lake City clinic, it was anticipated that Plaintiff would be transferred into the Lake City

---

[1] Exhibit A to Doc. 18 is broken up into several attachments to Doc. 18 on the CM-ECF docket sheet. The page numbers above refer to the original page numbers stamped on the pages, not the page numbers of the PDF copies of the Exhibit.

position, but eventually worked into the Gainesville facility.  Ex. C, p. 19, 29-31; Ex. D, p. 13-20.

Initially, relocation expenses were discussed, but prior to finalization of the swap, Plaintiff was informed that his moving expenses would not be paid. Ex. A, p. 4, 46, 47, 75-76, 80-84, 146-50, 168-69, 189, 250, 276, 278. In fact, Plaintiff signed a transfer request which specifically stated that moving expenses would not be authorized. Ex. A, p. 280-81.  Below is a copy of that section of the transfer request.



Plaintiff asserts that despite signing this statement, he believed he could still reapply for moving expenses within two years.  Doc. 23, Affidavit of Dr. Novack, ¶ 6.  Plaintiff transferred to Gainesville in early 1999. Ex. A, p. 5.

During calendar year 1999, Plaintiff experience a series of events that he considered discriminatory acts.  As the Plaintiff stated in his response to the motion for summary judgment:

> Once Novack began working at the Gainesville VA, he experienced
> discriminatory acts by the employees at the VA (Novack's Affidavit associated
> with this Response). Specifically, Novack was the only dentist that did not have a
> dental assistant; Novack was denied leave for Yom Kippur in 1999; Novack was
> asked to buy a ham for a 1999 Christmas party; Novack was detailed to the Lake
> City clinic in 1999 once a week; Novack was not provided a parking pass during
> early 1999; Novack was required to work in an undersized office in 1999; and,

> Novack was assigned to be a lab supervisor in 1999 without a pay increase). (Defendant's Exhibit A, pages 47-49) In addition, when Novack re-applied for reimbursement of his moving expenses he was denied.

Doc. 24, p. 2. Also, Novack continued to reapply for reimbursement of moving expenses up until March of 2001, but the requests were always denied..

The Plaintiff admits, however, that concerning the 1999 events, he did not contact an EEO counselor until eight months into 2000:

> On August 29, 2000 Novack contacted Loretta Bell, an EEO counselor at the VA regarding the discriminatory acts by the employees at the VA (Novack's Affidavit associated with this Response). At the time Ms. Bell told him that all of his complaints seems to be related and she told him it had 45 days from the last incident to file a formal complaint. (Defendant's Exhibit A, page 99-100).

Doc. 24, p. 2. Later, after his March 2001 request for reimbursement was denied, he informed his supervisor Dr. Scheitler that he would pursue an EEOC claim. Plaintiff alleges that Dr. Scheitler responded with a threat: "When you came here, you were at Lake City and I got you out of there. They need someone there now. Maybe I will send you back up there." Ex. B, p. 67-68.  Dr. Novack was never reassigned to Lake City.  Id.

On September 27, 2001, the VA notified Plaintiff that it was accepting for investigation Plaintiff's claim that the VA failed to reimburse his Miami to Gainesville moving expenses. Ex. A, p. 54-59.  All other claims were dismissed because they were untimely. Id. The VA investigated the matter and on April 29, 2002, issued a decision denying Plaintiff's claims. Ex. A, p. 3-26. The VA based its decision on the fact that Plaintiff agreed to the Miami-Gainesville transfer with the understanding it was for his convenience and therefore moving expenses would not be authorized. Id. at p. 22-26. Plaintiff appealed to the Equal Employment Opportunity Commission (EEOC) and on January 9, 2004, the EEOC issued its decision affirming the VA,

but remanding the case for additional investigation as to whether the VA retaliated against Plaintiff after he informed his superior of his intention to file an EEO claim.1 Ex. B, p. 47-54. The issue to be investigated was whether Plaintiff's superior threatened him with a transfer to Lake City if an EEO complaint was filed. Ex. B, p. 48-49. On remand, the VA investigated the retaliation allegations and on April 19, 2004, denied the claim. Ex. B, p. 1-8. The VA found that Plaintiff never was transferred to Lake City and that all dentists in Gainesville were required to rotate through the Lake City clinic for a brief time until a permanent dentist could be found. Id.

Plaintiff then filed this action. Turning to Plaintiff's claims based on the 1999 events, the Court finds that all but the reimbursement issue are not timely brought. Under 29 C.F.R. § 1614.105(a)(1), a Plaintiff is required to contact a EEO counselor within 45 days of the alleged discriminatory act. That section, entitled "Pre-complaint processing," states in part:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter. (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

In short, by the time Dr. Novack first contacted the Counselor -- in August of 2000 -- concerning the events that took place in 1999, he was already past the mandatory 45-day deadline. Nothing the counselor said to him at that moment could have extended the deadline which had long since passed. Delaware State College v. Ricks, 449 U.S. 250, 257-58, 101 S.Ct. 498, 504 (1980); Pearson v. Macon-Bibb County Hosp. Auth., 952 F.2d 1274, 1279 (11th Cir. 1992). Thus, the only discriminatory act that was even arguably brought in a timely complaint is the failure to reimburse Dr. Novack for moving benefits.

However, Dr. Novack cannot present a genuine issue of material fact with regard to the moving expenses issue.  Initially, a Title VII plaintiff must establish a prima facie case of discrimination. Generally, this requires the plaintiff to show: (1) he was a member of a protected class; (2) he was subjected to an adverse personnel action; and (3) he was treated differently than similarly- situated employees outside of the protected class.  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973); <u>Jones v. Firestone Tire & Rubber Co., Inc.</u>, 977 F.2d 527, 536 (11th Cir. 1992); <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181, 1185 (11th Cir. 1984).  Additionally, the plaintiff retains at all times the ultimate burden of persuading the trier of fact he was the victim of intentional discrimination.  <u>Saint Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507, 113 S.Ct. 2742, 2748 (1993).

Here, Dr. Novack admits that in January 1999 he knowingly signed a form stating that he understood that he was not going to receive moving expenses, which was pursuant to VA policy for transfers at the convenience of the transferee.  Second, Dr. Novack cannot point to a similarly situated dentist in the VA who was transferred at personal, rather than governmental, convenience and who had his or her moving expenses paid.  Thus, he cannot show that he was treated less favorably than a person outside his protected class.

Finally, with regard to the retaliation claim, to establish a prima fade case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1457 (11th Cir. 1998). Here, the sole basis for Plaintiff's retaliation claim is a statement by Dr. Scheitler: "When you came here, you were at Lake City and I got you out of there. They need someone there now.

Maybe I will send you back up there." Ex. B, p. 67-68. It is undisputed that Plaintiff was never permanently transferred to Lake City, nor was he assigned to the Lake City clinic more than the other dentists. Ex. B, p. 74, 82, 108. In addition, courts have held that transfer issues, standing alone, do not raise Title VII concerns. Maniccia v. Brown, 171 F.3d 1364, 1369 n. 3 (11th Cir. 1999)(no adverse action when transfer caused no change in pay and plaintiff had previously volunteered to work at location); Pennington v. City of Huntsville, Ala., 93 F. Supp. 2d 1201, 1215 (N.D. Ala. 2000)(no adverse action where transfer did not entail less pay, less prestige, fewer benefits or more demeaning work); Smith v. Alabama Dept. of Public Safety, 64 F. Supp. 2d 1215, 1221-22 (M.D. Ala.1999)(transfer from Selma, Ala. to Montgomery, Ala., which decreased time spent with minor children, not adverse action); Brown v. Brody, 199 F.3d 446, 455-56 (D.C. Cir. 1999)(lateral transfer not adverse action); Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996)(no adverse action when transfer was not demotion in form or substance). Thus, Plaintiff was not threatened with an adverse action. In addition, a threat which is never carried out cannot form the basis of a retaliation claim. Pennington, 93 F. Supp. 2d at 1219-20 (no adverse action where adverse action threatened, but quickly rescinded). In sum, therefore, Plaintiff cannot show an adverse action, which is the sine qua non of a retaliation claim. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

Defendant's motion for summary judgment (doc. 18) is granted, and judgment should be entered in favor of the defendant on all claims in this case.

**DONE AND ORDERED** this *19th* day of March, 2007

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge

*Case No: 1:04-cv-00040-MP-AK*